UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17CV219-GCM

| | |
|---|---|
| **REGINA B. WILLIAMS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| **NANCY A. BERRYHILL, Acting Commissioner** ) | |
| **of Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court upon Plaintiff's Motion for Summary Judgment (Doc. No.11) and the Commissioner's Motion for Summary Judgment (Doc. No. 13). Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.  Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance alleging a disability onset date of May 18, 2012. (Tr. 322, 328). Plaintiff's claim was denied both initially and on reconsideration; thereafter, Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). (Tr. 201, 217, 221, 52). After conducting a hearing, the ALJ issued a decision which was unfavorable to Plaintiff, from which Plaintiff appealed to the Appeals Council. (Tr. 151, 168). The Appeals Council vacated the ALJ's decision and remanded for a new hearing, which was conducted on August 12, 2016. (Tr. 168, 21). At the hearing, Plaintiff amended her onset of disability date to April 16, 2014. (Tr. 25). The ALJ once again denied her application

1

in a decision dated November 4, 2016. (Tr. 173). Plaintiff again requested review from the Appeals Council. (Tr. 17). Plaintiff's request for review was denied, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). (Tr. 1). Thereafter, Plaintiff timely filed this action, seeking review of the Commissioner's final decision.

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, *Smith v. Schwieker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales, supra*. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. *Hays v. Sullivan, supra*.

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented

with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

**B.     Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

(1)     Whether the claimant is engaged in substantial gainful activity;

(2)     Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3)     Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)     Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and

(5)     Whether the claimant is able to do any other work, considering his RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i-v). In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

**C.     The Administrative Decision**

In rendering his decision, the ALJ first concluded that Plaintiff had not engaged in substantial gainful activity since her alleged amended onset date. (Tr. 179). At the second step, the ALJ found that Plaintiff suffered from the following severe impairments: diabetes mellitus, asthma, obstructive sleep apnea, obesity, open reduction with internal fixation/right distal tibia, and lymphedema. (Tr. 179). At the third step, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 179-80).

The ALJ then found that Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c), "except occasional climbing; avaoidance of concentrated exposure to fumes and hazards; and frequent but not constant pushing and pulling with the right lower extremity." (Tr. 180). In making this finding, the ALJ considered all of Plaintiff's symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, as required by 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p. (*Id*.) The ALJ also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id*.) While the ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, he determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 185).

At the fourth step, the ALJ found that Plaintiff was no longer capable of performing her past relevant work. (Tr. 186). At step five, the ALJ determined that in light of Plantiff's RFC, age, education, and work experience, and based on testimony from a vocational expert, that Plaintiff could perform other unskilled jobs existing in significant numbers in the national economy, such as caretaker, change house attendant, and laundry worker. (Tr. 187). Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act. (Tr. 188).

4

D. **Discussion**

Plaintiff has made the following assignments of error: (1) the ALJ failed to analyze all of her medically determinable impairments; and 2) the ALJ failed to give legally sufficient reasons for rejecting medical opinions. Plaintiff's assignments of error will be discussed seriatim.

Plaintiff first argues that that the ALJ erred by not analyzing all of her medically determinable impairments. Plaintiff lists nine conditions that she says the ALJ did not evaluate. However, Plaintiff fails to point to any evidence in the record to demonstrate that these physical conditions affect her ability to perform any of the work-related activities such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling. 20 C.F.R. §§ 404.1521 and 416.921. Merely to allege error on the ALJ's part, as Plaintiff has done, is insufficient. Plaintiff must also demonstrate that the error was harmful. *See Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2008) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.").

The ALJ's mistake must be found harmless unless Plaintiff can point to prejudice resulting from that error. *See Camp v. Massanari*, 22 Fed. Appx. 311 (4th Cir. 2001). Plaintiff has not alleged that she has been prejudiced—nor has she demonstrated any prejudice; she has merely pointed out the ALJ's omissions. Plaintiff cannot show prejudice if the ALJ "would have reached the same result notwithstanding his initial error." *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994). Notably, the burden of showing harmful error is on Plaintiff, as she is the party attacking the agency's determination. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). The Court finds that the Plaintiff had failed to carry her burden.

The evidence of record does not demonstrate that the conditions at issue caused any functional limitations over and above those the ALJ found in the RFC. With regard to her hypertension, the ALJ acknowledged that Plaintiff had hypertension; he discussed Plaintiff's visit with Dr. Kurd in February, 2014, when Plaintiff's first blood pressure reading was 168/101 and her second was 140/100. (Tr. 181, 617-18). Plaintiff admitted then that she was not taking her hypertension medication, but that she had a blood pressure cuff at home, because she monitored her father's blood pressure. (Tr. 181, 613).

Plaintiff's blood pressure was, at various times, well controlled, stable, and uncontrolled. Notably, the record also shows that when Plaintiff takes her anti-hypertensive and pain medications properly, her hypertension can be controlled. *See Gross v. Heckler*, 785 F.2d 1163, 1165-66 (4th Cir. 1986) (symptoms that can be controlled by medication are not disabling). Plaintiff admitted that she did not always take her medications. Moreover, there are no comments in the record (nor does Plaintiff highlight any) where any doctor imposed any work-related limitations because of Plaintiff's hypertension.

With regard to Plaintiff's cardiac conditions, gout, fatty liver, and flat foot, Plaintiff cites no allegations of any subjective symptoms as a result of these conditions; no records of treatment for them; and no mention of any functional limitations stemming therefrom. Moreover, neither Plaintiff nor her attorney mentioned these conditions at the ALJ hearing. (Tr. 25-47).

Plaintiff also contends that the ALJ neglected to consider her alleged mental impairment, but does not bother to mention specifically what that impairment is. She does, however, cite numerous transcript pages in her brief without discussion. The transcript pages Plaintiff cites only reveal that Plaintiff had suffered from depression during the period at issue, but that once her doctor increased the dosage of Sertraline to 100 mg, Plaintiff's depression was controlled.

Although the ALJ did not specifically limit Plaintiff to unskilled work, all three occupations that he relied on at step five of the sequential evaluation were unskilled. (Tr. 49, 187). "The basic demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857 (SSA). Plaintiff does not identify any record evidence indicating that she has any limitations in performing any of the above listed work-related activities (or that she has any other functional limitations) as a result of her depression. Nor did Plaintiff or her attorney mention any mental conditions or related functional limitations at her ALJ hearing that would limit or prevent her ability to perform unskilled work. (Tr. 23-51). Thus, just as with her alleged physical impairments discussed above, Plaintiff has also failed to sustain her burden of proving that the ALJ's lack of discussion of her depression would have changed the outcome of this case. As such, remand is unwarranted.

In her second assignment of error, Plaintiff argues that the ALJ failed to give legally sufficient reasons for rejecting medical opinions. Plaintiff attempts to find error with regard to the ALJ's weighing of the instruction from Dalissa Burke, PA-C, on April 16, 2014, that Plaintiff should elevate her leg as high as possible, toes above nose, whenever she noticed swelling. (Tr. 733). In so doing, Plaintiff incorrectly alleges that the ALJ gave only one reason for rejecting Dr. Burke's opinion—that Dr. Ellington's treatment notes did not instruct Plaintiff to elevate her leg. (Plaintiff's Brief at 11). While it is accurate that Dr. Ellington did not instruct Plaintiff to elevate her leg, the plain language of the ALJ's decision reveals that the ALJ also gave several additional reasons for his weighing of Ms. Burke's statement.

The ALJ explained that Ms. Burke was a certified physician's assistant—and thus, not an "acceptable medical source" under the Commissioner's regulations. (Tr. 186, 20 C.F.R. §§ 404.1513 and 416.913). As such, her statement was not a "medical opinion" as defined at 20 C.F.R. §§ 404.1527(a)(2); nor could it be given controlling weight—because it was neither a medical opinion, nor was it issued by a treating physician. (Tr. 186). Nevertheless, the ALJ appropriately weighed Ms. Burke's statement as one coming from an "other source." 20 C.F.R. §§ 404.1513(d) and 416.913(d).

The ALJ observed that Ms. Burke provided the note at issue on Plaintiff's first visit to OrthoCarolina when she saw Dr. Anderson as the supervising physician. (Tr. 186, 765-66). On that date, Ms. Burke noted diffuse, significant swelling over the right ankle. (Tr. 765).

Thereafter, Dr. Anderson referred Plaintiff to Dr. Ellington for treatment (and thus, Ms. Burke apparently only saw Plaintiff one time). By contrast, the ALJ noted that Dr. Ellington performed surgery and continued to treat Plaintiff through January 11, 2016, when he referred her to the lymphedema clinic. (Tr. 186). The ALJ had previously discussed the treatment the lymphedema clinic provided, as well as the therapy goals that Plaintiff achieved there, including her ability to obtain maximal reduction in edema and to become independent in home treatment for it. (Tr. 185). Therapy culminated in Plaintiff meeting three goals, partially meeting the fourth goal, and progressing on the fifth goal (Tr. 185). She also achieved reduced measurements of both the right ankle and the calf. (Tr. 185).

The ALJ also explained that Dr. Ellington signed a return to work form on June 17, 2015, where he indicated that Plaintiff should not return to work until reevaluated. (Tr. 186, 930). The ALJ observed that the form referenced a return appointment date, but that the form did not show a follow-up appointment date. (Tr. 186, 930). The ALJ observed that Dr. Ellington did not identify

8

any physical limitations on that form (although there was opportunity to do so. (Tr. 186, 930). After Plaintiff's June 24, 2014 right ankle fusion surgery, Dr. Ellington instructed her to be non-weightbearing on that leg for six weeks (an instruction Plaintiff did not comply with). (Tr. 735, 736, 752). As the ALJ noted, Dr. Ellington's notes do not document that Plaintiff complained to him of the alleged need to elevate her leg 3-4 times a day for 30 minutes each time. (Tr. 186). Indeed, Dr. Ellington's notes do not always document swelling. On April 25, May 5, and June 24, 2014 (the date of her ankle surgery), Dr. Ellington specifically noted that there was no lymphadenopathy and no significant swelling. (Tr. 752, 756, 758, 760). On July 10, a couple weeks after ankle surgery, he noted that she had "minimal swelling." (Tr. 754). Thus, Plaintiff appears to overstate the frequency with which she would need to elevate her leg.

As a result, the ALJ appropriately gave more weight to Plaintiff's treating orthopedist and his contemporaneous progress notes, made in the course of seeking medical treatmen.t (Tr. 186). Because the ALJ correctly applied the law for weighing medical source opinions and gave ample reasons for weighing Ms. Burke's statement as he did, he did not err.

While the ALJ did not discuss the State agency medical consultants' opinions at length, he did say enough to make it clear that he did not entirely adopt those opinions because: (1) Plaintiff amended her onset date after those doctors issued their opinions; and (2) she developed additional medical conditions after the reconsideration determination. (Tr. 186). Contrary to Plaintiff's argument, the ALJ's articulation of his weighing of Dr. Huffman- Zechman's opinion does not provide a basis for remand.

Plaintiff argues that the ALJ's RFC is less restrictive than Dr. Huffman-Zechman's August 2012 opinion, but again, Plaintiff fails to develop her argument. Plaintiff does not identify the

9

ways in which she thinks this is so—nor does she explain why she thinks it matters. (Plaintiff's Brief at 16-17).

To start with, Plaintiff's claim that the ALJ's RFC was less restrictive than Dr. Huffman-Zechman's opinion is not entirely accurate. In certain areas, the ALJ and Dr. Huffman- Zechman found the same limitations. Both found Plaintiff capable of medium level work. (Tr. 180, 117). Both found Plaintiff should avoid concentrated exposure to fumes and hazards. (Tr. 180, 118).

Moreover, Plaintiff neglects to note that the ALJ's RFC was actually more restrictive than Dr. Huffman-Zechman's opinion, in two respects. First, the ALJ found that Plaintiff could occasionally climb (without distinguishing between ramps/stairs and ladders/ropes/scaffolds). (Tr. 180). Dr. Huffman-Zechman found Plaintiff could frequently climb ramps and stairs—and thus, his opinion was less restrictive than the ALJ's in that regard. (Tr. 117). The doctor also found that Plaintiff could occasionally climb ladders, ropes, and scaffolds—consistent with the ALJ's decision. (Tr. 180, 117). Second, the ALJ found that Plaintiff could perform frequent, but not constant pushing and pulling with her right leg; whereas the doctor opined that Plaintiff was unlimited in this regard. (Tr. 180, 117). The evidence of Plaintiff's 2014 right ankle surgery and her 2015 car accident in which she broke her right ankle warranted the additional limitation in pushing and pulling that the ALJ included in the RFC. (Tr. 180, 734, 878).

The ALJ's RFC is less restrictive than the doctor's opinion in that the doctor found that Plaintiff could only frequently balance, stoop, kneel, crouch, and crawl, whereas the ALJ found no limitations in these activities. (Tr. 180, 117-118). However, Plaintiff has failed to demonstrate any harmful error in the ALJ's lack of discussion of these discrepancies. Even if the ALJ had accepted all of the remaining postural limitations at the "frequent" level that Dr. Huffman-Zechman found, Plaintiff would still be able to perform the occupations the ALJ relied on at step

five of the sequential evaluation. (Tr. 187). The occupation of caretaker (DOT # 301.687-010) requires only occasional balancing, but Plaintiff can perform frequent balancing, according to Dr. Huffman-Zechman. Caretaking requires frequent stooping and kneeling, which is equal to what the doctor found Plaintiff could do. Crouching and crawling are not present in caretaking, and thus, there is no conflict between the demands of the occupation and the doctor's limitations.

The change house attendant occupation (DOT # 358.687-010) requires only occasional stooping, but the doctor found Plaintiff can stoop frequently. The remaining postural activities are not present in this occupation; and thus, there is no conflict here, either.

Finally, the occupation of laundry worker II (DOT # 361.685-018) has the same profile as that of change house attendant. Stooping is required occasionally; the other postural activities are not present. Thus, Plaintiff's undeveloped (and partially inaccurate) argument fails to justify a remand, because even applying the more restrictive "frequent" limitations in certain postural activities, Plaintiff can nevertheless perform the occupations the ALJ identified at step five.

**V.    Conclusion**

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. *See Richardson v. Perales, supra; Hays v. Sullivan, supra*. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales, supra*, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1)   the decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**;

(2)   Plaintiff's Motion for Summary Judgment is **DENIED**;

(3)   the Commissioner's Motion for Summary Judgment is **GRANTED**; and

(4)   this action is **DISMISSED**.

Signed: April 2, 2018

Graham C. Mullen
United States District Judge